CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ M. Poff**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CHRISTOPHER BETHEA,            )
    Plaintiff,                )      Civil Action No. 7:24-cv-00339
                              )
v.                            )
                              )      By:  Elizabeth K. Dillon
DR. MULLINS,                  )          Chief United States District Judge
    Defendant.                )

**MEMORANDUM OPINION**

Plaintiff Christopher Bethea, a Virginia prisoner acting *pro se*, brought a lawsuit alleging inadequate medical when detained at Wallens Ridge State Prison.  (Compl., Dkt. No. 1.)  The defendant, Dr. Mullins, moves for summary judgment.  (Dkt. No. 33.)  His motion argues that Bethea did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).  Bethea filed a response to the motion.  (Dkt. No. 40.)

For the reasons stated in this opinion, defendant's motion for summary judgment will be granted and this matter will be dismissed in its entirety.

I.  BACKGROUND

A.  **Plaintiff's Complaint**

Bethea alleges that he injured one of his toes in July or August of 2023.  (Compl. 2, 4.) The injury caused his toe to excessively bleed and ache.  Plaintiff states that he is a diabetic and "any injury that involves puncture wounds or bleeding can be very detrimental to my health . . . ."  (*Id.*)

Dr. Mullins, the institutional doctor, stitched the wound to stop the bleeding, but the wound did not heal and it still causes pain.  After it was stitched, Bethea complains that he did not receive any medicine to prevent infection or pain.  He notes that the showers were clogged

with dirty water and Bethea was afraid of an infection.  (Compl. 2.)  The wound continued to bleed through Bethea's stitches.  (*Id.* at 4.)

Plaintiff wrote multiple requests to see the institutional doctor and an endocrinologist to follow up after he received his stitches.  Bethea was told that he would be seen by a nurse and that the issue would be addressed as soon as possible, but no doctor's appointment was made for a period of time.  (*Id.*)  Bethea notes that he filed an emergency grievance and multiple facility requests, dated August 7, September 6, September 18, September 25, and October 29, 2023, which stated that he would be seen, and he did not receive a reply to the rest.  (*Id.* at 6.)  After "pressing the issue," he was seen by Dr. Mullins again on March 27, 2024.  Dr. Mullins did "nothing to help my injury," and Bethea "still battle[s] daily" with his injuries.  (*Id.*)

Bethea sues Dr. Mullins for "extreme negligence" and violation of the Eighth Amendment.  He seeks 10 million dollars plus $30,000 in compensatory damages and for mental distress.  (*Id.* at 3.)

**B.  Facts in Support of Motion for Summary Judgment**

In support of his motion for summary judgment, Dr. Mullins submitted the affidavit of C. Vilbrandt, the grievance coordinator at Wallens Ridge.  Vilbrandt is responsible for maintaining grievance files on inmates at ROSP.  (Vilbrandt Aff. ¶ 1, Dkt. No. 34-1.)  Dr. Mullins argues that he is entitled to summary judgment because Bethea did not exhaust his administrative remedies.

The Virginia Department of Corrections (VDOC) has adopted Operating Procedure 866.1, Offender Grievance Procedure.  (Vilbrandt Aff. ¶ 5, Encl. A.)  At the first step of the grievance process, an inmate must demonstrate that he made a good faith effort to informally resolve his complaint.  This can be done by submitting an informal complaint within 15 calendar

2

days of the incident.  Staff have 15 calendar days to respond to an informal complaint.

(Vilbrandt Aff. ¶ 8.)

At the second step, the inmate submits a regular grievance.  A regular grievance must be submitted within 30 calendar days of the incident.  (Vilbrandt Aff. ¶ 7.)  If a grievance is accepted during the intake process, the inmate will be provided with a Level I grievance response from the administrative head of the prison, typically the warden.  If the inmate is dissatisfied by the Level I response, he may appeal that determination to Level II.  Depending on the content of the grievance, the Level II response will be provided by a Regional Administrator or another VDOC Administrator external to the prison.  (Vilbrandt Aff. ¶ 11.)

Separate from the regular grievance process, an inmate may file an emergency grievance if he is subject to immediate risk of serious personal injury or irreparable harm.  Emergency grievances do not satisfy the exhaustion requirement.  (Vilbrandt Aff. ¶ 13.)

Bethea did not file any written complaints or grievances regarding the issues raised in this litigation.  (Vilbrandt Aff. ¶ 16, Encl. B.)

**B.  Plaintiff's Response to Motion for Summary Judgment**

Bethea's response maintains that he did exhaust his administrative remedies.  (Dkt. No. 36.)  In support, Bethea argues that he filed an emergency grievance, which can then be filed as a regular grievance.  (*Id.* at 1.)  Bethea also asserts that he filed an informal complaint, but this process was "impeded by no response but the emergency grievance has a receipt that binds a paper trail and proof for exhausting the administrative remedies."  (*Id.* at 2.)  Bethea also filed exhibits with his response, an emergency grievance and several facility requests.  (Dkt. No. 36-1.)

In his complaint, which is verified, Bethea alleges that he filed an emergency grievance and multiple facility requests, dated August 7, September 6, September 18, September 25, and October 29, 2023, which stated that he would be seen, and he did not receive a reply to the rest. (*Id.* at 6.)  Bethea also filed an affidavit which states that he "sent multiple Facility Requests, Grievances, to include an Emergency Grievance (Log # 70791) on 9/2/23, . . . referencing my diabetic status, frequent bleeding and constant pain during the . . . time frame."  (Dkt. No. 29 at 1.)  Bethea further avers that he "presented Facility Request from Aug. 7, 2023. . . which resulted in little more than lip service."  (*Id.* at 2.)

In his attachments, Bethea includes an emergency grievance dated September 6, 2023, which states that his left toe has "been in pain and leaking blood since June," explaining that he is a diabetic and is worried about an infection.  (Dkt. No. 36-1 at 1.)  A facility request dated August 7, 2023, states, "My left foot has been spilt open, it hurts real bad, I have put . . . ointment on it and it hasn't heal, I would like yall to look @ it before it get infected from dirty shower please help me (asap) thank you."  (*Id.* at 2.)  A response dated August 8, 2023, states "your [sic] on nurses list."  (*Id.*)  Bethea attached four more facility requests dated September 8, 2023, September 25, 2023, October 29, 2023, and December 11, 2024, each complaining about his toe and his worries about an infection.  (*Id.* at 3–6.)

Notably, he includes no regular grievances or appeals therefrom.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a summary judgment motion, a court "must consider whether a

reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in the pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248.

## B. Exhaustion of Administrative Remedies

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative

5

remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The exhaustion requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (quoting *Ross*, 578 U.S. at 643–44). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 578 U.S. at 643. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

The record in this case shows that Bethea made limited attempts to exhaust his claims, but did not pursue any written complaints or regular grievances through any or all applicable levels of review. In fact, Bethea did not file any informal complaints or regular grievances. He did file an emergency grievance and other facility requests, but these efforts are insufficient pursuant to OP 866.1. It is "the prison's requirements" that "define the boundaries of proper exhaustion," *Jones*, 549 U.S. at 218, and Bethea did not satisfy those requirements. Thus, Bethea did not exhaust his administrative remedies.

As the defendants have made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff. *Draper v. Ohai*, Civil Action No. 7:23-cv-00248, 2025 WL 270051, at *5 (W.D. Va. Jan. 22, 2025) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)). Bethea has not meet this burden. Bethea advances a general contention that his efforts to exhaust were "impeded by no response" to an informal complaint, but this argument is not sufficient to create an issue of fact on the availability of remedies to Bethea. "In order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." *Graham v. Gentry*, 413 F. App'x 660, 662 (4th Cir. 2011). Bethea offers no facts to show that he was prevented from accessing the appropriate grievance procedure.

For these reasons, the court will grant Dr. Mullins' motion for summary judgment.

### III.  CONCLUSION

The court will issue an order granting the pending motion for summary judgment and striking this case from the active docket of the court.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge

7